Daniel C. Sever;  Cal. Bar No. 200889
Sever Law Office
310 N. Indian Hill Blvd., Suite 602
Claremont, CA  91711
Telephone:  (760) 773-0720
Facsimile:  (760) 773-0732
E-Mail:    dansever@severlegal.com
Attorney for Plaintiffs

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA

EASTERN DIVISION

| | |
|---|---|
| PETROLEUM POWER INTERNATIONAL CORPORATION, a California corporation; and BIJAN HAKIMIAN, an individual<br><br>Plaintiffs,<br><br>vs.<br><br>HIDDEN PASSAGE, LLC, a California limited liability company;  REX BEASLEY, an individual;  ELLEN BERKOWITZ, AS SUCCESSOR TRUSTEE OF THE BERKOWITZ FAMILY TRUST DATED DECEMBER 14, 1987, RESTATED AUGUST 18, 1995;  THE UNITED STATES BUREAU OF LAND MANAGEMENT;  THE COUNTY OF SAN BERNARDINO;  and DOES 1 THROUGH 10 INCLUSIVE,<br><br>Defendants. | No. CV 5:21-cv-00028-JWH-SPx<br><br>FOURTH AMENDED COMPLAINT: (1) FOR DAMAGES CAUSED BY OBSTRUCTION OF EXPRESSLY RESERVED EASEMENT;  (2) TO QUIET TITLE TO IMPLIED EASEMENT;  (3) FOR DAMAGES CAUSED BY OBSTRUCTION OF IMPLIED  EASEMENT;  (4) TO QUIET TITLE TO EQUITABLE EASEMENT;  (5) FOR DAMAGES CAUSED BY OBSTRUCTION OF EQUITABLE EASEMENT;  (6) FOR DAMAGES CAUSED BY INTENTIONAL DIVERSION OF FLOOD CHANNEL;   (7) FOR PERMANENT INJUNCTION;  (8) FOR MANDATORY INJUNCTION;  AND (9) FOR DECLARATORY RELIEF<br><br>Judge:  Honorable John W. Holcomb |

- 1 –

Come now Plaintiffs Petroleum Power International Corporation, a California corporation, and Bijan Hakimian, an individual, and for causes of action against Defendants Hidden Passage, LLC;  Rex Beasley;  Ellen Berkowitz, as Trustee of The Berkowitz Family Trust Dated December 14, 1987, Restated August 18, 1995;  the United States Bureau of Land Management;  the County of San Bernardino;  and Does 1 through 10 inclusive, and allege as follows:

1.   At all times mentioned herein, Plaintiff Petroleum Power International Corporation ("PPI") is and has been a California corporation in good standing and authorized to conduct business under the laws of the State of California.

2.   At all times mentioned herein, Plaintiff Bijan Hakimian ("Hakimian") is and has been an individual who is residing in and engaging in business in San Bernardino County, California.

3.   At all times mentioned herein, Hakimian has been the Chief Financial Officer of PPI and has had firsthand knowledge of its business and affairs.

4.   At all times mentioned herein, Defendant Hidden Passage, LLC (sometimes referred to herein as "Defendant HP") is and has been a California limited liability Company which is engaged in business in San Bernardino County, California.

5.   At all times mentioned herein, Defendant Rex Beasley is and has been an individual who is engaged in business or residing in San Bernardino County, California.

6.   At all times mentioned herein, Defendant Ellen Berkowitz is and has been the Successor Trustee of The Berkowitz Family Trust Dated December 14, 1987, Restated August 18, 1995, an entity of unknown form which is engaged in business in San Bernardino County, California.

7.   At all times mentioned herein, Defendant United States Bureau of Land Management (hereinafter sometimes referred to as "BLM") is and has been an agency within the United States Department of the Interior responsible for administering public lands.

8.   At all times mentioned herein, Defendant County of San Bernardino is and has been a political subdivision located within the State of California.

- 2 –

FOURTH AMENDED COMPLAINT:  (1) FOR DAMAGES CAUSED BY OBSTRUCTION OF EXPRESSLY RESERVED EASEMENT;  (2) TO QUIET TITLE TO IMPLIED EASEMENT;  (3) FOR DAMAGES CAUSED BY OBSTRUCTION OF IMPLIED  EASEMENT;  (4) TO QUIET TITLE TO EQUITABLE EASEMENT;  (5) FOR DAMAGES CAUSED BY OBSTRUCTION OF EQUITABLE EASEMENT;  (6) FOR DAMAGES CAUSED BY INTENTIONAL DIVERSION OF FLOOD CHANNEL;  (7) FOR PERMANENT INJUNCTION;  (8) FOR MANDATORY INJUNCTION;  AND (9) FOR DECLARATORY RELIEF

9.   For the purposes of this Complaint, the phrase "the HP Defendants" shall mean and include Defendant Hidden Passage, LLC, Defendant Rex Beasley, and Defendant Ellen Berkowitz as the Successor Trustee of The Berkowitz Family Trust Dated December 14, 1987, Restated August 18, 1995;  the phrase "the HP Defendants" shall not include Defendant United States Bureau of Land Management or Defendant County of San Bernardino.

10.  The true names and capacities, whether individual, corporate, associate or otherwise, of Defendant Does 1 through 10, inclusive, are unknown to Plaintiffs at this time, and therefore Plaintiffs sue said Defendants by such fictitious names and will ask leave of Court to amend this Complaint to allege their true names and capacities once they are ascertained.

11.  Plaintiffs are informed and believe, and upon such basis allege, that each Defendant designated as a Doe herein is responsible in some manner for the acts, occurrences, and liabilities hereinafter alleged and referred to in this Complaint.

12.  Plaintiffs are informed and believe, and upon such basis allege, that each of the HP Defendants was the principal, agent, master, servant, employer or employee of each of the other HP Defendants, and that the conduct of each of the HP Defendants was done within the course and scope of said agency, contract or employment, and with the knowledge, permission, consent and/or ratification of each of the other HP Defendants.

## BACKGROUND

13.  Plaintiff Petroleum Power International Corporation ("PPI") first acquired an interest in the following real property in July, 2007, to wit, the real property commonly known as 7575 Little Morongo Canyon Road, Morongo Valley, San Bernardino County, California,  more particularly described as follows:

> The South 1/2  the Northwest 1/4 of the Southwest 1/4 of the Northeast 1/4 of Section 2, Township 1 South, Range 4 East, San Bernardino Base and Meridian, in the County of San Bernardino, State Of California, according to the Official Plat Thereof

- 3 –

FOURTH AMENDED COMPLAINT: (1) FOR DAMAGES CAUSED BY OBSTRUCTION OF EXPRESSLY RESERVED EASEMENT; (2) TO QUIET TITLE TO IMPLIED EASEMENT; (3) FOR DAMAGES CAUSED BY OBSTRUCTION OF IMPLIED  EASEMENT; (4) TO QUIET TITLE TO EQUITABLE EASEMENT; (5) FOR DAMAGES CAUSED BY OBSTRUCTION OF EQUITABLE EASEMENT; (6) FOR DAMAGES CAUSED BY INTENTIONAL DIVERSION OF FLOOD CHANNEL; (7) FOR PERMANENT INJUNCTION; (8) FOR MANDATORY INJUNCTION;  AND (9) FOR DECLARATORY RELIEF

APN: 0580-281-12-0-000

(hereinafter "the Pierce Ranch"). Historically, the foregoing property was known as "the Pierce Ranch" and, to this day, is still often referred to as "the Pierce Ranch." The founder of the Pierce Ranch was Thomas Ozro Pierce, Jr., who acquired title to the property by virtue of a Patent issued by the United States of America Bureau of Land Management on February 18, 1964. A true copy of the foregoing Patent is attached hereto as Exhibit "A".

14. The Pierce Ranch consists of approximately five acres. Residential structures on the Pierce Ranch include a two-bedroom home, a one-bedroom home, and two small bachelor-style cabins.

15. PPI's initial interest in the Pierce Ranch was that of a beneficiary under a Deed of Trust which was recorded against the property on July 16, 2007. A true copy of that Deed of Trust is attached hereto as Exhibit "B".

16. Kingsmead Finance Corp., a Delaware corporation, acquired the Pierce Ranch on August 21, 2007, from Cathleen M. Pierce and Richard S. Pierce, Co-Trustees of The Mary L. Pierce Trust Dated January 19, 1994. A true copy of the Grant Deed under which Kingsmead Finance Corp. acquired title to the Pierce Ranch is attached hereto as Exhibit "C".

17. PPI acquired the Pierce Ranch from Kingsmead Finance Corp. on June 1, 2015. A true copy of the Grant Deed under which PPI acquired title to the Pierce Ranch is attached hereto as Exhibit "D". Since June 1, 2015, and at all times since that date, PPI has been the owner of the Pierce Ranch.

18. During the period 2007 through 2015, Hakimian served as a manager of Kingsmead Finance Corp. and, in that capacity, had firsthand knowledge of its business and affairs.

19. Commencing no later than August, 2007, Hakimian began residing on a part-time basis in the two-bedroom home located at the Pierce Ranch. Prior to that time, commencing no later than 1982, Hakimian visited the Pierce Ranch on a fairly regular basis and provided caretaker services and other assistance to members of the Pierce family, who from time to time resided in the two-bedroom home located on the Pierce Ranch. As a consequence, Hakimian acquired personal

– 4 –

FOURTH AMENDED COMPLAINT: (1) FOR DAMAGES CAUSED BY OBSTRUCTION OF EXPRESSLY RESERVED EASEMENT; (2) TO QUIET TITLE TO IMPLIED EASEMENT; (3) FOR DAMAGES CAUSED BY OBSTRUCTION OF IMPLIED EASEMENT; (4) TO QUIET TITLE TO EQUITABLE EASEMENT; (5) FOR DAMAGES CAUSED BY OBSTRUCTION OF EQUITABLE EASEMENT; (6) FOR DAMAGES CAUSED BY INTENTIONAL DIVERSION OF FLOOD CHANNEL; (7) FOR PERMANENT INJUNCTION; (8) FOR MANDATORY INJUNCTION; AND (9) FOR DECLARATORY RELIEF

knowledge of the persons who were then residing as residents and tenants at the Pierce Ranch and the manner in which they gained access to the Pierce Ranch from Little Morongo Canyon Road.

20.   At all times from 1982 (at the latest) until late May, 2015, Hakimian and other persons who were residing in and/or visiting persons who were residing in the three residential structures located at the Pierce Ranch had access from Little Morongo Canyon Road to those residential structures by traveling a road commonly known as "the Passage" and which crossed Little Morongo Creek via a bridge commonly known as "the Pierce Bridge". The foregoing access road and bridge are hereinafter referred to as collectively "the Original Road."

21.   Until late May, 2015, all persons residing at and visiting the Pierce Ranch gained access to the Pierce Ranch by traveling on the Original Road. The Original Road runs adjacent to Little Morongo Creek and at one point crosses over Little Morongo Creek via the Pierce Bridge. Upon information and belief, the Original Road is located on portions of five parcels of real property commonly known as 7978, 7986, 8094, 8096, and 8098 Little Morongo Canyon Road, legally described on Exhibit "E" attached hereto, and hereinafter referred to as "the HP Property." The location of the Original Road is identified by the dotted yellow line on the aerial photograph which is attached hereto as Exhibit "F". The road which is marked by red dots on Exhibit "F" is the "New Road" that was subsequently constructed by the HP Defendants, as discussed more fully at Paragraph 28 of this Complaint.

22.   Upon information and belief, the Original Road served as the only means of access from Little Morongo Canyon Road to the Pierce Ranch for a period of at least 51 years, i.e., from February, 1964 (at the latest) until late May, 2015. During that time, following a heavy rainstorm, portions of the Original Road immediately adjacent to and including the Pierce Bridge were periodically susceptible to flooding, as a consequence of which the road would require repair. In addition, on such occasions, rocks and brush would sometimes block the culverts which existed beneath the Pierce Bridge. However, in most cases, only 10 to 20 feet of roadway were adversely affected by such flooding events, and the Original Road was completely restored within a matter of hours.

- 5 –

FOURTH AMENDED COMPLAINT: (1) FOR DAMAGES CAUSED BY OBSTRUCTION OF EXPRESSLY RESERVED EASEMENT; (2) TO QUIET TITLE TO IMPLIED EASEMENT; (3) FOR DAMAGES CAUSED BY OBSTRUCTION OF IMPLIED  EASEMENT; (4) TO QUIET TITLE TO EQUITABLE EASEMENT; (5) FOR DAMAGES CAUSED BY OBSTRUCTION OF EQUITABLE EASEMENT; (6) FOR DAMAGES CAUSED BY INTENTIONAL DIVERSION OF FLOOD CHANNEL; (7) FOR PERMANENT INJUNCTION; (8) FOR MANDATORY INJUNCTION;  AND (9) FOR DECLARATORY RELIEF

Similarly, it was usually no problem for PPI and its predecessors in interest to remove whatever rocks and brush were then interfering with the flow of water through the culverts beneath the Pierce Bridge and to restore the channel to its natural flow.

23.     Upon information and belief, the Original Road as it crosses the HP Property was first identified in Patents issued by the United States of America Bureau of Land Management and recorded with the Office of the San Bernardino County Recorder, true copies of which are attached hereto as Exhibits "G-1" through "G-5". Each of the foregoing Patents was issued to a predecessor-in-interest of the HP Property and issued subject to the express reservation of a right-of-way easement as follows:

> This patent is subject to a right-of-way not exceeding 50 feet in width, for roadway and public utilities purposes, to be located along the boundaries of said land.

Each of the foregoing patents pertains to one of the five-acre parcels now owned by Defendant Hidden Passage, LLC, as identified on Exhibit "E" attached hereto.

a.     Exhibit "G-1" pertains to 7978 Little Morongo Canyon Road (APN 0580-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) and provides that the foregoing parcel is subject to the 50-foot easement described above;

b.     Exhibit "G-2" pertains to 7986 Little Morongo Canyon Road (APN 0580-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) and provides that the foregoing parcel is subject to the 50-foot easement described above;

c.     Exhibit "G-3" pertains to 8094 Little Morongo Canyon Road (APN 0580-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) and provides that the foregoing parcel is subject to the 50-foot easement described above;

d.     Exhibit "G-4" pertains to 8096 Little Morongo Canyon Road (APN 0580-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) and provides that the foregoing parcel is subject to the 50-foot easement described above;

e.     Exhibit "G-5" pertains to 8098 Little Morongo Canyon Road (APN 0580-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) and provides that the foregoing parcel is subject to the 50-foot easement described above.

24.     Upon information and belief, the Original Road was continually used and maintained by PPI, by PPI's predecessors in interest, and by residents of the Pierce Ranch for not less than 51 years, during all of which time the foregoing use of the Original Road was open, continuous,

- 6 –

FOURTH AMENDED COMPLAINT: (1) FOR DAMAGES CAUSED BY OBSTRUCTION OF EXPRESSLY RESERVED EASEMENT; (2) TO QUIET TITLE TO IMPLIED EASEMENT; (3) FOR DAMAGES CAUSED BY OBSTRUCTION OF IMPLIED EASEMENT; (4) TO QUIET TITLE TO EQUITABLE EASEMENT; (5) FOR DAMAGES CAUSED BY OBSTRUCTION OF EQUITABLE EASEMENT; (6) FOR DAMAGES CAUSED BY INTENTIONAL DIVERSION OF FLOOD CHANNEL; (7) FOR PERMANENT INJUNCTION; (8) FOR MANDATORY INJUNCTION; AND (9) FOR DECLARATORY RELIEF

uninterrupted, and acquiesced to by all present and previous owners of the HP Property, by the United States Bureau of Land Management, and by the County of San Bernardino.

25.   As of the date of this Complaint, title to the HP Property is vested in Defendant Hidden Passage, LLC ("Defendant HP").  On or about April 24, 2015, Defendant HP acquired title to the HP Property from Ellen M. Berkowitz, Successor Trustee of the Berkowitz Family Trust.  The Berkowitz Family Trust had acquired title to the HP Property on or about August 26, 2013.

26.   For almost two years after The Berkowitz Family Trust purchased the HP Property, Defendant Ellen M. Berkowitz, in her capacity as Successor Trustee of the Trust, acknowledged and agreed with Hakimian that use of the Original Road was essential for the benefit of the Pierce Ranch.  In fact, at one point during the fall of 2013, the HP Defendants suggested that Hakimian hire a certain Bobcat operator who was known to the HP Defendants as a person suitable for repairing some storm damage to the Original Road because, at that particular time, equipment which Hakimian would have used for that purpose was temporarily not operable.  Hakimian accepted the HP Defendants' recommendation;  Hakimian employed and paid the person the HP Defendants had suggested to perform repairs to the Original Road.  Furthermore, in March, 2015, Defendant Beasley acknowledged that, in 2013, he and Defendant Berkowitz had cancelled an earlier escrow for their purchase of the HP Property when they learned that the property was subject to the rights of way identified in the patents described in Paragraph 23 of this Complaint, copies of which are attached as Exhibit G to this Complaint.  However, they used that fact as a bargaining chip and entered back into the transaction at a lower purchase price.

27.   Upon information and belief, at some point after The Berkowitz Family Trust purchased the HP Property, Defendant Ellen M. Berkowitz, in her capacity as Successor Trustee of the Trust, and Defendant Rex Beasley, acting as undisclosed principals, used a third party to initiate discussions regarding a possible purchase of the Pierce Ranch from PPI.  However, when it became clear to the HP Defendants that PPI had no intention of selling the Pierce Ranch, the HP Defendants attempted to pressure Hakimian to agree to a relocation of the easement to a lower portion of the

– 7 –

FOURTH AMENDED COMPLAINT:  (1) FOR DAMAGES CAUSED BY OBSTRUCTION OF EXPRESSLY RESERVED EASEMENT;  (2) TO QUIET TITLE TO IMPLIED EASEMENT;  (3) FOR DAMAGES CAUSED BY OBSTRUCTION OF IMPLIED  EASEMENT;  (4) TO QUIET TITLE TO EQUITABLE EASEMENT;  (5) FOR DAMAGES CAUSED BY OBSTRUCTION OF EQUITABLE EASEMENT;  (6) FOR DAMAGES CAUSED BY INTENTIONAL DIVERSION OF FLOOD CHANNEL;  (7) FOR PERMANENT INJUNCTION;  (8) FOR MANDATORY INJUNCTION;  AND (9) FOR DECLARATORY RELIEF

HP Property.  Hakimian rejected the HP Defendants' proposal because, as he pointed out, the road location which the HP Defendants had in mind was in a river bottom, thereby rendering any new road impassable for substantial periods of time after a heavy rain, thus depriving PPI and PPI's agents, tenants and invitees of guaranteed safe and reliable access to the Pierce Ranch.

28.    Notwithstanding Hakimian's warnings and objections, each of the HP Defendants, their agents, and employees utilized heavy equipment to construct a new road, some of which was constructed on the HP Property, and some of which was constructed on property owned by the United States Bureau of Land Management (hereinafter "the New Road").  In constructing the New Road, the HP Defendants acted in complete disregard of the culturally and environmentally sensitive nature of the canyon, and in complete disregard of federal, state, and county statutes, ordinances, and regulations enacted to govern such conduct.  In particular, the HP Defendants willfully trespassed upon BLM land and constructed a substantial portion of the New Road on environmentally sensitive BLM land without prior notice to or permission from BLM.  In addition, the HP Defendants erected a fence, removed vegetation, constructed a dam, and diverted the natural flow of the Little Morongo Creek, all without first obtaining required permits from the San Bernardino County Flood Control District, the State of California Department of Fish and Wildlife, and other county, state, and federal agencies having jurisdiction over such activities.

a.    As evidence of the foregoing, attached hereto as Exhibit "H" are true copies of Parcel Reports which Hakimian obtained from the San Bernardino County Land Use Services Department and which identify all permits which were issued with respect to Defendant HP Parcel Nos. 0580-281-10-000 and 0580-281-11-000 during the period 1987 through July, 2017.  A significant portion of the New Road runs through the foregoing two parcels. Exhibit "H" confirms that no permit for construction of the New Road was ever issued by San Bernardino County.

b.    Nor did the HP Defendants provide the State of California Department of Fish and Wildlife with advance notice of the road they planned to construct, nor did they obtain

- 8 –

FOURTH AMENDED COMPLAINT:  (1) FOR DAMAGES CAUSED BY OBSTRUCTION OF EXPRESSLY RESERVED EASEMENT; (2) TO QUIET TITLE TO IMPLIED EASEMENT; (3) FOR DAMAGES CAUSED BY OBSTRUCTION OF IMPLIED  EASEMENT; (4) TO QUIET TITLE TO EQUITABLE EASEMENT; (5) FOR DAMAGES CAUSED BY OBSTRUCTION OF EQUITABLE EASEMENT; (6) FOR DAMAGES CAUSED BY INTENTIONAL DIVERSION OF FLOOD CHANNEL; (7) FOR PERMANENT INJUNCTION; (8) FOR MANDATORY INJUNCTION;  AND (9) FOR DECLARATORY RELIEF

required permits from that Department or seek guidance on how best to ensure that nesting birds, the desert tortoise, and native plants were not damaged or destroyed in the process.

29.   The HP Defendants' Pattern and Practice of Ignoring Applicable Statutes and Regulations.

a.   The HP Defendants' construction of the New Road without first obtaining required permits is but one of many activities which they have conducted on their property in violation of the law and without obtaining required permits. In fact, the HP Defendants' conduct in this regard is symptomatic of a pattern and practice under which they conduct business on their property and build structures and roads on their property in violation of applicable codes and regulations. When caught, they either attempt to cover up their wrongdoing and/or give repeated assurances to the governmental agency involved that they will belatedly "make things right".

b.   For example, in May, 2019, Defendant HP was served with a Notice of Violation by the Code Enforcement Division of the San Bernardino County Land Use Services Department (Case No. C201900618), a true copy of which is attached hereto as Exhibit "I". The foregoing Notice identified numerous violations which had been observed during a March 11, 2019 inspection of the HP Property by County personnel, including the construction of many unpermitted buildings, unpermitted grading, the illegal removal of desert trees and plants, and the illegal operation of a short-term rental business known as The Hidden Passage Guest Ranch.

c.   On May 31, 2019, Defendant Ellen Berkowitz met with San Bernardino County personnel at a County office. A true copy of the San Bernardino County employee's summary of that meeting is attached hereto as Exhibit "J-1". As noted in that summary, Defendant Berkowitz falsely stated that there was "an exemption in place" for the unpermitted grading; however, County personnel soon confirmed that no such exemption existed. Also, despite substantial evidence to the contrary (including promotional material on the HP Defendants' own website), Defendant Berkowitz "stated that she is not running a

FOURTH AMENDED COMPLAINT:  (1) FOR DAMAGES CAUSED BY OBSTRUCTION OF EXPRESSLY RESERVED EASEMENT;  (2) TO QUIET TITLE TO IMPLIED EASEMENT;  (3) FOR DAMAGES CAUSED BY OBSTRUCTION OF IMPLIED EASEMENT;  (4) TO QUIET TITLE TO EQUITABLE EASEMENT;  (5) FOR DAMAGES CAUSED BY OBSTRUCTION OF EQUITABLE EASEMENT;  (6) FOR DAMAGES CAUSED BY INTENTIONAL DIVERSION OF FLOOD CHANNEL;  (7) FOR PERMANENT INJUNCTION;  (8) FOR MANDATORY INJUNCTION;  AND (9) FOR DECLARATORY RELIEF

STR" [short-term rental], "that she is a nice person and just allows her friends to stay
there," and that she "does not charge her 'friends' to stay there." However, attached hereto
as Exhibit J-2 are promotional materials downloaded from the HP Defendants' own
website on May 2, 2019, just 29 days earlier. After espousing the foregoing lies, she then
attempted to curry sympathy by "crying and stating that the complainant [Hakimian] has
threatened to kill her and he is an awful man", none of which is true.

30.   The location of the New Road is identified by the red dots on the aerial photograph which is
attached hereto as Exhibit "F". The location of the Original Road is identified by the dotted
yellow line on Exhibit "F"

31.   Soon after completing the New Road, the HP Defendants gave Hakimian an ultimatum: either
accept the New Road as the only means of access to the Pierce Ranch and cease using the Original
Road for that purpose, or the HP Defendants would move the existing community gate and take
other measures to prevent any person from using the Original Road. When Hakimian refused to
accede to the HP Defendants' demand, the HP Defendants and each of their agents and employees,
initiated a course of action designed and intended to disrupt access to the Pierce Ranch by PPI, by
PPI's predecessor in interest, and by all Pierce Ranch residents and invitees. In furtherance of the
foregoing, the HP Defendants moved an existing gate and forced all persons who wished to enter
the Pierce Ranch to use the New Road for that purpose. The foregoing actions of the HP
Defendants were taken without the consent of PPI and PPI's predecessor in interest and over
Hakimian's emphatic oral and written objections. Upon information and belief, the foregoing
actions of the HP Defendants were also taken without the consent of, and without prior notice to,
the United States Bureau of Land Management, the County of San Bernardino, and the California
Department of Fish and Wildlife. The HP Defendants completed their obstruction of the Original
Road in late May, 2015.

32.   In furtherance of their plan to destroy the Original Road as a suitable and reliable means of access
to the Pierce Ranch, on or about May 27, 2015, the HP Defendants, their agents, and employees

- 10 –

FOURTH AMENDED COMPLAINT: (1) FOR DAMAGES CAUSED BY OBSTRUCTION OF EXPRESSLY
RESERVED EASEMENT; (2) TO QUIET TITLE TO IMPLIED EASEMENT; (3) FOR DAMAGES CAUSED BY
OBSTRUCTION OF IMPLIED EASEMENT; (4) TO QUIET TITLE TO EQUITABLE EASEMENT; (5) FOR
DAMAGES CAUSED BY OBSTRUCTION OF EQUITABLE EASEMENT; (6) FOR DAMAGES CAUSED BY
INTENTIONAL DIVERSION OF FLOOD CHANNEL; (7) FOR PERMANENT INJUNCTION; (8) FOR
MANDATORY INJUNCTION; AND (9) FOR DECLARATORY RELIEF

attempted to destroy the Pierce Bridge. When Hakimian witnessed the foregoing activity, he summoned the San Bernardino County Sheriff's Office, as a result of which the HP Defendants' workers fled the scene. On that day, the HP Defendants' agents caused some damage to a portion of the Pierce Bridge, but most of the Pierce Bridge remains intact. A true copy of the San Bernardino County Sheriff's report for that incident is attached hereto as Exhibit "K".

33.    Also in furtherance of their plan to destroy the Original Road as a suitable and reliable means of access to the Pierce Ranch, the HP Defendants, their agents, and employees willfully and maliciously diverted the natural flow of the Little Morongo Creek so as to increase the width of the waterway and destroy the Pierce Bridge. Attached hereto as Exhibit "L" is a collection of photographs which accurately depict the efforts that the HP Defendants made in that regard.

34.    Attached hereto as Exhibit "M" is a true copy of a demand letter dated July 5, 2015, from Ellen Berkowitz to Bijan Hakimian and Dick Pierce regarding both the Original Road and the New Road. When neither Hakimian nor Mr. Pierce acceded to the HP Defendants' demands, counsel for the HP Defendants sent a follow-up letter to Hakimian dated July 16, 2015, a true copy of which is attached hereto as Exhibit "N". [1]

35.    On August 7, 2015, defendant HP caused two documents which are titled "Vehicular Access Easement" to be recorded with the office of the San Bernardino County Recorder as Document Nos. 2015-0340189 and 2015-0340191. True copies of the foregoing documents are attached hereto as Exhibits "O-1" and "O-2". The foregoing documents purport to grant a vehicular access easement to PPI, subject to certain conditions.

a.    Upon information and belief, the legal descriptions set forth in the Vehicular Access Easements purport to identify the location of the New Road.

---

[1] On page 3 of her July 15, 2015, letter to Hakimian (Exhibit "M"), Defendant Ellen Berkowitz confirms her knowledge of various state and federal statutes and regulations that govern the construction of roadways, especially in the vicinity of waterways and environmentally sensitive areas. Her knowledge and experience in this area of the law makes the blatant disregard by the HP Defendants of those statutes and regulations when constructing the New Road all the more egregious.

– 11 –

FOURTH AMENDED COMPLAINT: (1) FOR DAMAGES CAUSED BY OBSTRUCTION OF EXPRESSLY RESERVED EASEMENT; (2) TO QUIET TITLE TO IMPLIED EASEMENT; (3) FOR DAMAGES CAUSED BY OBSTRUCTION OF IMPLIED EASEMENT; (4) TO QUIET TITLE TO EQUITABLE EASEMENT; (5) FOR DAMAGES CAUSED BY OBSTRUCTION OF EQUITABLE EASEMENT; (6) FOR DAMAGES CAUSED BY INTENTIONAL DIVERSION OF FLOOD CHANNEL; (7) FOR PERMANENT INJUNCTION; (8) FOR MANDATORY INJUNCTION; AND (9) FOR DECLARATORY RELIEF

b. According to their terms, neither Vehicular Access Easement is assignable by PPI to any other person or entity. Furthermore, each Vehicular Access Easement can be revoked entirely by Defendant HP at any time, with or without cause. As a consequence, the ability of PPI, its agents, tenants, and invitees to access the Pierce Ranch is subject to the unfettered whim of Defendant HP, in clear violation of the express reservations of easement contained in the Patents attached hereto as Exhibits G-1 through G-5.

c. As noted previously, a significant portion of the New Road crosses over land owned by the United States Bureau of Land Management and was constructed on such land without the consent of BLM, thereby requiring PPI, its agents, tenants. and invitees to commit trespass on government property in order to access the Pierce Ranch.

d. The Vehicular Access Easements were recorded without prior notice to either PPI or Hakimian and without the consent of either PPI or Hakimian.

36. The New Road which the HP Defendants constructed is not legal, nor is it suitable for safe and reliable year-round access to the Pierce Ranch from Little Morongo Canyon Road. Because of its location, the New Road is prone to flooding, susceptible to being washed out as a result of a moderate to heavy rainstorm, and does not serve as a dependable means of access to the Pierce Ranch by PPI's agents, tenants, invitees and service providers, and by police, fire, and emergency medical personnel who may be dispatched to the Pierce Ranch.

37. From 2015 to the present day, Hakimian has made repeated demands upon the HP Defendants that they remove all obstructions to the Original Road and that they not hinder PPI's efforts to make necessary repairs to the Original Road, including the Pierce Bridge. Hakimian and PPI have offered to bear the entire cost and expense of any such repairs and to hold the HP Defendants harmless from any liability which might arise out of such activities. The HP Defendants have steadfastly refused to accommodate PPI with respect to any such requests PPI and Hakimian have made.

FOURTH AMENDED COMPLAINT: (1) FOR DAMAGES CAUSED BY OBSTRUCTION OF EXPRESSLY
RESERVED EASEMENT; (2) TO QUIET TITLE TO IMPLIED EASEMENT; (3) FOR DAMAGES CAUSED BY
OBSTRUCTION OF IMPLIED  EASEMENT; (4) TO QUIET TITLE TO EQUITABLE EASEMENT; (5) FOR
DAMAGES CAUSED BY OBSTRUCTION OF EQUITABLE EASEMENT; (6) FOR DAMAGES CAUSED BY
INTENTIONAL DIVERSION OF FLOOD CHANNEL; (7) FOR PERMANENT INJUNCTION; (8) FOR
MANDATORY INJUNCTION;  AND (9) FOR DECLARATORY RELIEF

38.  Since late May, 2015, Hakimian's concerns about the inadequacy of the New Road have been confirmed by several rainstorms which flooded the New Road, rendering it impassable.

a.  The first flooding incident occurred on or about October 17, 2015, as a consequence of which PPI and PPI's agents, tenants and invitees were unable to access the Pierce Ranch for more than two weeks because of severe damage to the New Road. Meanwhile, there was no water damage to the Original Road, except for minor damage to that portion of the Original Road located adjacent to the Pierce Bridge. Any damage to the Original Road which may have resulted from the October 17, 2015 storm was far less severe than the damage to the New Road and was easily reparable.

b.  On September 9, 2017, the New Road flooded again. This time the New Road was completely overrun with slurry and a layer of mud that was 2-1/2 feet deep in some places Attached hereto as Exhibit P-1 are photographs which accurately depict the condition of the New Road as a result of that flooding event. As a consequence, there was no working road to the Pierce Ranch for approximately three weeks. During that period, Keanush Hakimian (one of Hakimian's sons) and Keanush's fiancé were substantially impaired in performing their duties as licensed realtors. In addition, Keanush's elder autistic brother missed crucial education time with his professors at College of the Desert. Furthermore, Hakimian was (and still is) medically fragile because of a chronic heart condition, a diagnosis of multiple myeloma cancer, and his absolute dependence on prescribed medication. Hakimian did not return to the Pierce Ranch for approximately five months because he feared being stranded at a location where emergency medical personnel might be unable to come if called. Meanwhile, there was no water damage to the Original Road, except for minor damage to that portion of the Original Road located adjacent to the Pierce Bridge. Any damage to the Original Road which may have resulted from the September 9, 2017 storm was far less severe than the damage to the New Road and was easily reparable.

- 13 –

FOURTH AMENDED COMPLAINT: (1) FOR DAMAGES CAUSED BY OBSTRUCTION OF EXPRESSLY RESERVED EASEMENT; (2) TO QUIET TITLE TO IMPLIED EASEMENT; (3) FOR DAMAGES CAUSED BY OBSTRUCTION OF IMPLIED EASEMENT; (4) TO QUIET TITLE TO EQUITABLE EASEMENT; (5) FOR DAMAGES CAUSED BY OBSTRUCTION OF EQUITABLE EASEMENT; (6) FOR DAMAGES CAUSED BY INTENTIONAL DIVERSION OF FLOOD CHANNEL; (7) FOR PERMANENT INJUNCTION; (8) FOR MANDATORY INJUNCTION; AND (9) FOR DECLARATORY RELIEF

c.     On January 9, 2018, the New Road flooded again, this time as a result of a relatively moderate rainfall.  Despite previous assurance from the HP Defendants and their attorneys that the slurry previously deposited on the New Road would ensure its stability, such was not the case.  Meanwhile, the Original Road remained dry, for the most part, and damage to the Original Road which may have resulted from the January 9, 2018 storm was far less severe than the damage to the New Road and was easily reparable.

d.     On February 2, 2019, the New Road flooded again, as a consequence of which Hakimian, his son Keanush, and Keanush's fiancé were required to spend the night of February 2, 2019 at a motel.  Meanwhile Hakimian's eldest son, who happens to be autistic, was stranded at the Pierce Ranch without any way to get out.  On February 3, 2019, Hakimian attempted to return home to access his medication and to ensure the safety of his autistic son.  Agents of Defendant HP attempted to block Hakimian's access to the Pierce Ranch, as a result of which Hakimian was forced to cross the wash via a makeshift bridge.  At that point, Hakimian had been without his medication, so turning back was not an option.  Once again, water damage to the Original Road was far less severe than the damage to the New Road and was easily reparable.

e.     On February 14, 2019, the New Road flooded again.  As a consequence, Hakimian, his two sons, and the fiancé of his son Keanush were stranded at the Pierce Ranch for three days, with absolutely no way out.  On February 14, 2019, Hakimian reported his situation by telephone to the Joshua Tree Station of the San Bernardino County Sheriff's Office.  A true copy of the San Bernardino County Sheriff's report for that telephone call is attached hereto as Exhibit "P-2".  On February 17, 2019, the stranded parties were barely able to make their way down the New Road and off the property.  Although agents of Defendant HP did make some effort to repair the New Road to make it passable, their efforts in that regard were wholly insufficient.  Meanwhile, the Original Road suffered hardly any water damage at all and, in any event, was easily reparable.

- 14 –

FOURTH AMENDED COMPLAINT:  (1) FOR DAMAGES CAUSED BY OBSTRUCTION OF EXPRESSLY RESERVED EASEMENT;  (2) TO QUIET TITLE TO IMPLIED EASEMENT;  (3) FOR DAMAGES CAUSED BY OBSTRUCTION OF IMPLIED  EASEMENT;  (4) TO QUIET TITLE TO EQUITABLE EASEMENT;  (5) FOR DAMAGES CAUSED BY OBSTRUCTION OF EQUITABLE EASEMENT;  (6) FOR DAMAGES CAUSED BY INTENTIONAL DIVERSION OF FLOOD CHANNEL;  (7) FOR PERMANENT INJUNCTION;  (8) FOR MANDATORY INJUNCTION;  AND (9) FOR DECLARATORY RELIEF

39. As noted above, water damage to the Original Road has been far less severe and disruptive than water damage to the New Road. In fact, Defendant HP constructed a campground for its AirBnB guests along the secure confines of the Original Road and constructed a golf cart trail into federal lands running from the Original Road. As is plainly evident by an examination of Exhibit "F", the New Road runs for a distance of 960 feet directly inside the Little Morongo Basis flood plain, whereas the Original Road crosses the flood plain at the Pierce Bridge for a distance of approximately 40 feet.

40. As a proximate consequence of the HP Defendants' obstruction of the Original Road, tenants who had been residing at the Pierce Ranch and paying rent to PPI were forced to move, causing significant monetary damage to PPI.

41. As noted previously, the HP Defendants' interference with the Original Road is not only causing damage to PPI, but, in addition, constitutes a threat to public safety and to the personal safety of Hakimian and other persons who reside at the Pierce Ranch. The Original Road serves as the only safe, reliable, year-round access to the Pierce Ranch and to adjoining properties by such agencies as the Bureau of Land Management, The San Bernardino County Fire Department, the San Bernardino County Sherriff, the California Departments of Forestry and Fish and Wildlife, and other local, state, and federal agencies which have jurisdiction over the Pierce Ranch and adjoining properties.

42. Attached hereto as Exhibit "Q" is a collection of photographs of the Little Morongo Basin which were recently downloaded pursuant to Google Earth's historical imagery feature.

    a. Exhibit Q-1: Image taken in September, 2011. The solid red line marks the location of the Original Road. The community gate and the Pierce Bridge are marked by yellow pins.

    b. Exhibit Q-2: Image taken in June, 2009. The solid red line marks the location of the Original Road. The community gate and the Pierce Bridge are marked by yellow pins.

    c. Exhibit Q-3: Image taken January, 2006. The solid red line marks the location of the Original Road. The community gate and the Pierce Bridge are marked by yellow pins.

- 15 -

FOURTH AMENDED COMPLAINT: (1) FOR DAMAGES CAUSED BY OBSTRUCTION OF EXPRESSLY RESERVED EASEMENT; (2) TO QUIET TITLE TO IMPLIED EASEMENT; (3) FOR DAMAGES CAUSED BY OBSTRUCTION OF IMPLIED EASEMENT; (4) TO QUIET TITLE TO EQUITABLE EASEMENT; (5) FOR DAMAGES CAUSED BY OBSTRUCTION OF EQUITABLE EASEMENT; (6) FOR DAMAGES CAUSED BY INTENTIONAL DIVERSION OF FLOOD CHANNEL; (7) FOR PERMANENT INJUNCTION; (8) FOR MANDATORY INJUNCTION; AND (9) FOR DECLARATORY RELIEF

d.    Exhibit Q-4: Image taken June, 2002.  The solid red line marks the location of the Original Road.  The community gate and the Pierce Bridge are marked by yellow pins.

e.    Exhibit Q-5: Image taken June, 1996.  The solid red line marks the location of the Original Road.  The community gate and the Pierce Bridge are marked by yellow pins.

f.    Exhibit Q-6: Image taken June, 2011, with emphasis on the Pierce Bridge.  Culverts beneath the Pierce Bridge allowed the Little Morongo Creek to flow naturally under the bridge and down the canyon, as evidenced by the shrubbery growing downstream along the creek bed.  See also Exhibit Q-1 for evidence of the vibrant shrubbery.

g.    Exhibit Q-7: Image taken March, 2015.  The solid red line marks the location of the Original Road.  The solid blue line marks the location of the New Road.  The community gate and the Pierce Bridge are marked by yellow pins.

43.   The photographs attached as Exhibit "Q" to this Complaint conclusively demonstrate that, from June, 1996 through September, 2011, the Original Road provided access to and from the Pierce Ranch without causing any disturbance whatsoever to the natural environment.

44.   In November, 2017, Paul W. Gregory, P.E., a licensed professional engineer was retained to determine the most reliable, safe, and direct way to obtain access to the Pierce Ranch from Little Morongo Canyon Road.  Mr. Gregory concluded that the Original Road, including the Pierce Bridge, constituted the most reliable, safe, and direct access to the Pierce Ranch.

45.   In November, 2018, Paul W. Gregory conducted a follow-up inspection of the Little Morongo Canyon and the alternative means of accessing the Pierce Ranch from Little Morongo Canyon Road.  Attached hereto as Exhibit "R" is a true copy of a Declaration that Mr. Gregory executed on April 8, 2019, in which he confirmed and elaborated on the findings he had made in November, 2017.  Paragraph 5 of Mr. Gregory's Declaration provides as follows:

Based on my observations and on my education, training, and experience in evaluating sites such as the Little Morongo Canyon, it is my professional opinion that the only way to have a maintainable dirt road for vehicle traffic up Little Morongo Canyon is to:

- 16 –

FOURTH AMENDED COMPLAINT: (1) FOR DAMAGES CAUSED BY OBSTRUCTION OF EXPRESSLY RESERVED EASEMENT; (2) TO QUIET TITLE TO IMPLIED EASEMENT; (3) FOR DAMAGES CAUSED BY OBSTRUCTION OF IMPLIED  EASEMENT; (4) TO QUIET TITLE TO EQUITABLE EASEMENT;  (5) FOR DAMAGES CAUSED BY OBSTRUCTION OF EQUITABLE EASEMENT; (6) FOR DAMAGES CAUSED BY INTENTIONAL DIVERSION OF FLOOD CHANNEL; (7) FOR PERMANENT INJUNCTION; (8) FOR MANDATORY INJUNCTION;  AND (9) FOR DECLARATORY RELIEF

a.   keep it located on high ground wherever possible

b.   when it is necessary to cross the canyon, do that crossing in as short of a distance as possible

c.   insure that any such crossing is perpendicular to the water flow in the canyon

d.   in no case should the road be run in the bottom of the canyon parallel to the water flow

Restoring the Original Road as the means for accessing the Pierce Ranch satisfies each of the foregoing concerns.  On the other hand, as Mr. Gregory noted at Paragraph 4.d of his Declaration: "The 'new' road location is such that the new river flow path deposits 'wash' sediment on that road so as to make the north end of the valley, including the Pierce Ranch, isolated for days."

46.   Mr. Gregory's conclusions are consistent with findings made by the Environmental Affairs Division of the System Development Department of Southern California Edison Company ("SCE") in September, 1977.  On September 27, 1977, SCE submitted the results of a Cultural and Natural Resources Investigation for a 12 kV Extension in the Little Morongo Valley.  A true copy of Exhibit "B" to that report is attached hereto as Exhibit "S".  As noted toward the bottom of Page 2 and at the top of Page 3 of Exhibit "B", two SCE archeologists and one SCE biologist, spent one and one-half days "performing a reconnaissance" of properties which included both the Pierce Ranch and Defendant HP's Property.  In particular, their study included "vehicular traverses of the canyon along Little Morongo Drive from Little Morongo Heights to the Thomas O Pierce ranch, and (2) interviews of local residents directed toward access to private property and individual knowledge of significant resources or collections."  Among their conclusions, the SCE personnel reported at Page 5 of their report as follows:

As a result, if construction and subsequent maintenance activities of the distribution line are limited to that easement and existing canyon roads, no adverse impact is anticipated to those resources.

. . .

Insofar as all construction, maintenance, and related activities are restricted to the presently proposed right-of-way and existing canyon roads, no adverse impact is anticipated to either cultural or natural resources within the investigated zone.

– 17 –

FOURTH AMENDED COMPLAINT:  (1) FOR DAMAGES CAUSED BY OBSTRUCTION OF EXPRESSLY RESERVED EASEMENT;  (2) TO QUIET TITLE TO IMPLIED EASEMENT;  (3) TO QUIET TITLE FOR DAMAGES CAUSED BY OBSTRUCTION OF IMPLIED EASEMENT;  (4) TO QUIET TITLE TO EQUITABLE EASEMENT;  (5) FOR DAMAGES CAUSED BY OBSTRUCTION OF EQUITABLE EASEMENT;  (6) FOR DAMAGES CAUSED BY INTENTIONAL DIVERSION OF FLOOD CHANNEL;  (7) FOR PERMANENT INJUNCTION;  (8) FOR MANDATORY INJUNCTION;  AND (9) FOR DECLARATORY RELIEF

This 1977 mention of "existing canyon roads" was a clear reference to the Original Road which was identified in the Patents that were originally issued and recorded in 1960 as to the property now owned by Defendant HP – the expressly reserved easement which the HP Defendants have since obstructed, and which the Plaintiffs now seek to protect.

## FIRST CAUSE OF ACTION
### DAMAGES CAUSED BY OBSTRUCTION OF EXPRESSLY RESERVED EASEMENT
(Only as to Defendants Hidden Passage, LLC, Rex Beasley, and Ellen Berkowitz, as Successor Trustee of the Berkowitz Family Trust Dated December 14, 1987, Restated August 18, 1995)

47.   Plaintiffs PPI and Hakimian incorporate by reference each and every allegation contained in paragraphs 1 through 46 of this Complaint as if repeated and set forth here completely.

48.   Upon information and belief, the Original Road as it crosses the HP Property was first identified in Patents issued by the United States of America Bureau of Land Management and recorded with the Office of the San Bernardino County Recorder, true copies of which are attached hereto as Exhibits "G-1" through "G-5". Each of the foregoing Patents was issued to a predecessor-in-interest of the HP Property and issued subject to the express reservation of a right-of-way easement as follows:

> This patent is subject to a right-of-way not exceeding 50 feet in width, for roadway and public utilities purposes, to be located along the boundaries of said land.

Each of the foregoing patents pertains to one of the five-acre parcels now owned by Defendant HP, as identified on Exhibit "E" attached hereto.

49.   As of the spring of 2015, the Original Road was well established by long-standing use and acquiescence as constituting the right-of-way easement which was expressly reserved in the Patents issued to the predecessors-in-interest of the HP Property. The long-standing use and

- 18 –

FOURTH AMENDED COMPLAINT: (1) FOR DAMAGES CAUSED BY OBSTRUCTION OF EXPRESSLY RESERVED EASEMENT; (2) TO QUIET TITLE TO IMPLIED EASEMENT; (3) FOR DAMAGES CAUSED BY OBSTRUCTION OF IMPLIED EASEMENT; (4) TO QUIET TITLE TO EQUITABLE EASEMENT; (5) FOR DAMAGES CAUSED BY OBSTRUCTION OF EQUITABLE EASEMENT; (6) FOR DAMAGES CAUSED BY INTENTIONAL DIVERSION OF FLOOD CHANNEL; (7) FOR PERMANENT INJUNCTION; (8) FOR MANDATORY INJUNCTION;  AND (9) FOR DECLARATORY RELIEF

acquiescence of the Original Road for that purpose was confirmed by past and present owners of the HP Property as the sole right-of-way from Little Morongo Canyon Road to the Pierce Ranch.

50.  The HP Defendants' obstruction of the Original Road and their unpermitted construction of the New Road was willful, malicious, perpetrated without the consent of Hakimian and PPI, and in fact was perpetrated in spite of strenuous objections asserted by Hakimian and PPI.

51.  The HP Defendants' obstruction of the Original Road and their construction of the New Road have deprived Hakimian and PPI of their only safe and reliable access to the Pierce Ranch from Little Morongo Canyon Road,

52.  As a proximate result of the HP Defendants' conduct:

    a.  PPI has suffered, and will continue to suffer, monetary damage, including (but not limited to) loss of rental income and the cost of restoring the Original Road, including the Pierce Bridge. The HP Defendants knew that PPI derived rental income from tenants residing at the Pierce Ranch. Nevertheless, the HP Defendants willfully and maliciously obstructed the Original Road so that PPI would suffer a substantial loss of rental income.

    b.  PPI has suffered, and will continue to suffer, property damage.

The precise amount of PPI's damages are now unknown but will be proved with specificity at the time of trial.

53.  As a further proximate result of the HP Defendants' conduct:

    a.  Hakimian, as the Chief Financial Officer of PPI, has suffered, and will continue to suffer, monetary damage, including (but not limited to) loss of the income which he would have received from PPI had the HP Defendants not obstructed the Original Road. The HP Defendants knew that Hakimian derived income from PPI and that Hakimian's receipt of such income was dependent on PPI's continued receipt of rental income from tenants residing at the Pierce Ranch. Nevertheless, the HP Defendants willfully and maliciously obstructed the Original Road so that Hakimian would suffer a substantial loss of income.

    b.  Hakimian has suffered, and will continue to suffer, property damage.

- 19 –

FOURTH AMENDED COMPLAINT: (1) FOR DAMAGES CAUSED BY OBSTRUCTION OF EXPRESSLY RESERVED EASEMENT; (2) TO QUIET TITLE TO IMPLIED EASEMENT; (3) FOR DAMAGES CAUSED BY OBSTRUCTION OF IMPLIED EASEMENT; (4) TO QUIET TITLE TO EQUITABLE EASEMENT; (5) FOR DAMAGES CAUSED BY OBSTRUCTION OF EQUITABLE EASEMENT; (6) FOR DAMAGES CAUSED BY INTENTIONAL DIVERSION OF FLOOD CHANNEL; (7) FOR PERMANENT INJUNCTION; (8) FOR MANDATORY INJUNCTION; AND (9) FOR DECLARATORY RELIEF

The precise amount of Hakimian's damages are now unknown but will be proved with specificity at the time of trial.

54.    The conduct of the HP Defendants' in obstructing the Original Road, thereby cutting off and denying PPI and PPI's agents and invitees safe and reliable access to the Pierce Ranch, was malicious, despicable, oppressive, intended to cause injury, and was in conscious disregard of the rights and safety of persons traveling to and from the Pierce Ranch. As a consequence, PPI and Hakimian are each entitled to an award of exemplary and punitive damages in such amount as may be appropriate to punish the HP Defendants for their wrongful conduct and to deter similar conduct in the future.

## SECOND CAUSE OF ACTION
## QUIET TITLE TO IMPLIED EASEMENT
### (Only as to Defendant Hidden Passage, LLC)

55.    Plaintiff PPI incorporates by reference each and every allegation contained in paragraphs 1 through 46 of this Complaint as if repeated and set forth here completely.

56.    In the event the court determines that the Original Road as identified in this Complaint does not in fact constitute the right-of-way easement that was expressly reserved in the Patents issued to the predecessors-in-interest of the property now owned by Defendant HP, then, in the alternative, Plaintiff PPI is entitled to the entry of a judgment which confirms the existence of an implied easement in the location of the Original Road and that the foregoing implied easement exists for the benefit of the Pierce Ranch, runs with the land, and inures to the benefit of Plaintiff PPI and PPI's successors and assigns.

57.    Upon information and belief, the Original Road was first established as a reasonable and necessary manner of accessing the property now known as the Pierce Ranch at a time when the Pierce Ranch and the property now owned by Defendant HP were in common ownership, i.e., owned by the same person – the United States Bureau of Land Management. At that time, the Bureau of Land

- 20 –

FOURTH AMENDED COMPLAINT:  (1) FOR DAMAGES CAUSED BY OBSTRUCTION OF EXPRESSLY RESERVED EASEMENT;  (2) TO QUIET TITLE TO IMPLIED EASEMENT;  (3) FOR DAMAGES CAUSED BY OBSTRUCTION OF IMPLIED  EASEMENT;  (4) TO QUIET TITLE TO EQUITABLE EASEMENT;  (5) FOR DAMAGES CAUSED BY OBSTRUCTION OF EQUITABLE EASEMENT;  (6) FOR DAMAGES CAUSED BY INTENTIONAL DIVERSION OF FLOOD CHANNEL;  (7) FOR PERMANENT INJUNCTION;  (8) FOR MANDATORY INJUNCTION;  AND (9) FOR DECLARATORY RELIEF

Management established the Original Road as an obvious and apparently permanent use of the property now owned by Defendant HP for the benefit of the property now known as the Pierce Ranch. When the Bureau of Land Management transferred the five parcels which now comprise the property now owned by Defendant HP but retained ownership of the parcel now known as the Pierce Ranch, the Bureau of Land Management did so with the implication that the Original Road would continue to be reasonably necessary to the use and benefit of the Pierce Ranch.

## THIRD CAUSE OF ACTION

### DAMAGES CAUSED BY OBSTRUCTION OF IMPLIED EASEMENT

(Only as to Defendants Hidden Passage, LLC, Rex Beasley, and Ellen Berkowitz, as Successor Trustee of the Berkowitz Family Trust Dated December 14, 1987, Restated August 18, 1995)

58. Plaintiffs PPI and Hakimian incorporate by reference each and every allegation contained in Paragraphs 55 through 57 of this Complaint as if repeated and set forth here completely.

59. As a proximate result of the HP Defendants' conduct:

    a.    PPI has suffered, and will continue to suffer, monetary damage, including (but not limited to) loss of rental income and the cost of restoring the Original Road, including the Pierce Bridge. The HP Defendants knew that PPI derived rental income from tenants residing at the Pierce Ranch. Nevertheless, the HP Defendants willfully and maliciously obstructed the Original Road so that PPI would suffer a substantial loss of rental income.

    b.    PPI has suffered, and will continue to suffer, property damage.

The precise amount of PPI's damages are now unknown but will be proved with specificity at the time of trial.

60. As a further proximate result of the HP Defendants' conduct:

    a.    Hakimian, as the Chief Financial Officer of PPI, has suffered, and will continue to suffer, monetary damage, including (but not limited to) loss of the income which he would have received from PPI had the HP Defendants not obstructed the Original Road. The HP

- 21 –

FOURTH AMENDED COMPLAINT: (1) FOR DAMAGES CAUSED BY OBSTRUCTION OF EXPRESSLY RESERVED EASEMENT; (2) TO QUIET TITLE TO IMPLIED EASEMENT; (3) FOR DAMAGES CAUSED BY OBSTRUCTION OF IMPLIED EASEMENT; (4) TO QUIET TITLE TO EQUITABLE EASEMENT; (5) FOR DAMAGES CAUSED BY OBSTRUCTION OF EQUITABLE EASEMENT; (6) FOR DAMAGES CAUSED BY INTENTIONAL DIVERSION OF FLOOD CHANNEL; (7) FOR PERMANENT INJUNCTION; (8) FOR MANDATORY INJUNCTION; AND (9) FOR DECLARATORY RELIEF

Defendants knew that Hakimian derived income from PPI and that Hakimian's receipt of such income was dependent on PPI's continued receipt of rental income from tenants residing at the Pierce Ranch. Nevertheless, the HP Defendants willfully and maliciously obstructed the Original Road so that Hakimian would suffer a substantial loss of income.

b.   Hakimian has suffered, and will continue to suffer, property damage.

The precise amount of Hakimian's damages are now unknown but will be proved with specificity at the time of trial.

61.   The conduct of the HP Defendants' in obstructing the Original Road, thereby cutting off and denying PPI and PPI's agents and invitees safe and reliable access to the Pierce Ranch, was malicious, despicable, oppressive, intended to cause injury, and was in conscious disregard of the rights and safety of persons traveling to and from the Pierce Ranch. As a consequence, PPI and Hakimian are each entitled to an award of exemplary and punitive damages in such amount as may be appropriate to punish the HP Defendants for their wrongful conduct and to deter similar conduct in the future.

## FOURTH CAUSE OF ACTION
## QUIET TITLE TO EQUITABLE EASEMENT
### (Only as to Defendant Hidden Passage, LLC)

62.   Plaintiff PPI incorporates by reference each and every allegation contained in paragraphs 1 through 46 of this Complaint as if repeated and set forth here completely.

63.   In the event the court determines that the Original Road as identified in this Complaint does not in fact constitute that right-of-way easement which was expressly reserved in the Patents issued to the predecessors-in-interest of the property now owned by Defendant HP, then, in the alternative, Plaintiff PPI is entitled to the entry of a judgment which confirms the existence of an equitable easement in the location of the Original Road and that the foregoing equitable easement exists for

- 22 –

FOURTH AMENDED COMPLAINT: (1) FOR DAMAGES CAUSED BY OBSTRUCTION OF EXPRESSLY RESERVED EASEMENT; (2) TO QUIET TITLE TO IMPLIED EASEMENT; (3) FOR DAMAGES CAUSED BY OBSTRUCTION OF IMPLIED EASEMENT; (4) TO QUIET TITLE TO EQUITABLE EASEMENT; (5) FOR DAMAGES CAUSED BY OBSTRUCTION OF EQUITABLE EASEMENT; (6) FOR DAMAGES CAUSED BY INTENTIONAL DIVERSION OF FLOOD CHANNEL; (7) FOR PERMANENT INJUNCTION; (8) FOR MANDATORY INJUNCTION; AND (9) FOR DECLARATORY RELIEF

the benefit of the Pierce Ranch, runs with the land, and inures to the benefit of Plaintiff PPI and PPI's successors and assigns.

64. Plaintiff PPI and PPI's agents, employees, tenants, invitees, and service providers will irreparably harmed if the HP Defendants' obstruction of Original Road is allowed to continue.

65. Upon information and belief, PPI and PPI's predecessors in interest used, repaired, and maintained the Original Road continuously for more than 51 years before the HP Defendants obstructed PPI's access to the Original Road.

66. The HP Defendants will suffer no harm or hardship whatsoever if they are enjoined from further obstructing access to the Pierce Ranch via the Original Road.

67. The HP Defendants will suffer no harm or hardship whatsoever if PPI's right to use the Original Road is restored and confirmed.

68. If PPI and PPI's agents, employees, tenants, invitees, and service providers continue to be denied use of the Original Road, such denial will far outweigh any hardship that the HP Defendants may arguably experience if PPI's right to use the Original Road is restored and confirmed.

## FIFTH CAUSE OF ACTION

### DAMAGES CAUSED BY OBSTRUCTION OF EQUITABLE EASEMENT

(Only as to Defendants Hidden Passage, LLC, Rex Beasley, and Ellen Berkowitz, as Successor Trustee of the Berkowitz Family Trust Dated December 14, 1987, Restated August 18, 1995)

69. Plaintiffs PPI and Hakimian incorporate by reference each and every allegation contained in Paragraphs 62 through 68 of this Complaint as if repeated and set forth here completely.

70. As a proximate result of the HP Defendants' conduct:

a.   PPI has suffered, and will continue to suffer, monetary damage, including (but not limited to) loss of rental income and the cost of restoring the Original Road, including the Pierce Bridge. The HP Defendants knew that PPI derived rental income from tenants residing at

- 23 –

FOURTH AMENDED COMPLAINT: (1) FOR DAMAGES CAUSED BY OBSTRUCTION OF EXPRESSLY RESERVED EASEMENT; (2) TO QUIET TITLE TO IMPLIED EASEMENT; (3) FOR DAMAGES CAUSED BY OBSTRUCTION OF IMPLIED EASEMENT; (4) TO QUIET TITLE TO EQUITABLE EASEMENT; (5) FOR DAMAGES CAUSED BY OBSTRUCTION OF EQUITABLE EASEMENT; (6) FOR DAMAGES CAUSED BY INTENTIONAL DIVERSION OF FLOOD CHANNEL; (7) FOR PERMANENT INJUNCTION; (8) FOR MANDATORY INJUNCTION; AND (9) FOR DECLARATORY RELIEF

the Pierce Ranch.  Nevertheless, the HP Defendants willfully and maliciously obstructed the Original Road so that PPI would suffer a substantial loss of rental income.

b.    PPI has suffered, and will continue to suffer, property damage.

The precise amount of PPI's damages are now unknown but will be proved with specificity at the time of trial.

71.    As a further proximate result of the HP Defendants' conduct:

a.    Hakimian, as the Chief Financial Officer of PPI, has suffered, and will continue to suffer, monetary damage, including (but not limited to) loss of the income which he would have received from PPI had the HP Defendants not obstructed the Original Road.  The HP Defendants knew that Hakimian derived income from PPI and that Hakimian's receipt of such income was dependent on PPI's continued receipt of rental income from tenants residing at the Pierce Ranch.  Nevertheless, the HP Defendants willfully and maliciously obstructed the Original Road so that Hakimian would suffer a substantial loss of income.

b.    Hakimian has suffered, and will continue to suffer, property damage.

The precise amount of Hakimian's damages are now unknown but will be proved with specificity at the time of trial.

72.    The conduct of the HP Defendants' in obstructing the Original Road, thereby cutting off and denying PPI and PPI's agents and invitees safe and reliable access to the Pierce Ranch, was malicious, despicable, oppressive, intended to cause injury, and was in conscious disregard of the rights and safety of persons traveling to and from the Pierce Ranch.  As a consequence, PPI and Hakimian are each entitled to an award of exemplary and punitive damages in such amount as may be appropriate to punish the HP Defendants for their wrongful conduct and to deter similar conduct in the future.

– 24 –

FOURTH AMENDED COMPLAINT:  (1) FOR DAMAGES CAUSED BY OBSTRUCTION OF EXPRESSLY RESERVED EASEMENT;  (2) TO QUIET TITLE TO IMPLIED EASEMENT;  (3) FOR DAMAGES CAUSED BY OBSTRUCTION OF IMPLIED  EASEMENT;  (4) TO QUIET TITLE TO EQUITABLE EASEMENT;  (5) FOR DAMAGES CAUSED BY OBSTRUCTION OF EQUITABLE EASEMENT;  (6) FOR DAMAGES CAUSED BY INTENTIONAL DIVERSION OF FLOOD CHANNEL;  (7) FOR PERMANENT INJUNCTION;  (8) FOR MANDATORY INJUNCTION;  AND (9) FOR DECLARATORY RELIEF

SIXTH CAUSE OF ACTION

DAMAGES CAUSED BY INTENTIONAL DIVERSION OF FLOOD CHANNEL

(Only as to Defendants Hidden Passage, LLC, Rex Beasley, and Ellen Berkowitz, as Successor Trustee

of the Berkowitz Family Trust Dated December 14, 1987, Restated August 18, 1995)

73.    Plaintiffs PPI and Hakimian incorporate by reference each and every allegation contained in paragraphs 1 through 46 of this Complaint as if repeated and set forth here completely.

74.    In furtherance of their plan to destroy the Original Road as a suitable and reliable means of access to the Pierce Ranch, the HP Defendants, their agents, and employees willfully and maliciously diverted the natural flow of the Little Morongo Creek so as to increase the width of the waterway and destroy the Pierce Bridge.  Attached hereto as Exhibit "L" is a collection of photographs which accurately depict the efforts that the HP Defendants made in that regard.

75.    As a proximate result of the HP Defendants' conduct:

a.    PPI has suffered, and will continue to suffer, monetary damage, including (but not limited to) loss of rental income and the cost of restoring the Original Road, including the Pierce Bridge.  The HP Defendants knew that PPI derived rental income from tenants residing at the Pierce Ranch.  Nevertheless, the HP Defendants willfully and maliciously obstructed the Original Road so that PPI would suffer a substantial loss of rental income.

b.    PPI has suffered, and will continue to suffer, property damage.

The precise amount of PPI's damages are now unknown but will be proved with specificity at the time of trial.

76.    As a further proximate result of the HP Defendants' conduct:

a.    Hakimian, as the Chief Financial Officer of PPI, has suffered, and will continue to suffer, monetary damage, including (but not limited to) loss of the income which he would have received from PPI had the HP Defendants not obstructed the Original Road.  The HP Defendants knew that Hakimian derived income from PPI and that Hakimian's receipt of such income was dependent on PPI's continued receipt of rental income from tenants

- 25 –

FOURTH AMENDED COMPLAINT: (1) FOR DAMAGES CAUSED BY OBSTRUCTION OF EXPRESSLY RESERVED EASEMENT; (2) TO QUIET TITLE TO IMPLIED EASEMENT; (3) FOR DAMAGES CAUSED BY OBSTRUCTION OF IMPLIED EASEMENT; (4) TO QUIET TITLE TO EQUITABLE EASEMENT; (5) FOR DAMAGES CAUSED BY OBSTRUCTION OF EQUITABLE EASEMENT; (6) FOR DAMAGES CAUSED BY INTENTIONAL DIVERSION OF FLOOD CHANNEL; (7) FOR PERMANENT INJUNCTION; (8) FOR MANDATORY INJUNCTION;  AND (9) FOR DECLARATORY RELIEF

residing at the Pierce Ranch.  Nevertheless, the HP Defendants willfully and maliciously
obstructed the Original Road so that Hakimian would suffer a substantial loss of income.

b.    Hakimian has suffered, and will continue to suffer, property damage.

The precise amount of Hakimian's damages are now unknown but will be proved with specificity at the time of trial.

77.    The conduct of the HP Defendants' in intentionally diverting the natural flow of the Little Morongo Creek, thereby cutting off and denying PPI and PPI's agents and invitees safe and reliable access to the Pierce Ranch, was malicious, despicable, oppressive, intended to cause injury, and was in conscious disregard of the rights and safety of persons traveling to and from the Pierce Ranch.  As a consequence, PPI and Hakimian are each entitled to an award of exemplary and punitive damages in such amount as may be appropriate to punish the HP Defendants for their wrongful conduct and to deter similar conduct in the future.

SEVENTH CAUSE OF ACTION

PERMANENT INJUNCTION

(Only as to Defendants Hidden Passage, LLC, Rex Beasley, and Ellen Berkowitz, as Successor Trustee of the Berkowitz Family Trust Dated December 14, 1987, Restated August 18, 1995)

78.    Plaintiffs PPI and Hakimian incorporate by reference each and every allegation contained in paragraphs 1 through 77 of this Complaint as if repeated and set forth here completely.

79.    PPI and Hakimian are informed and believe, and on that basis allege, that unless the HP Defendants are restrained and enjoined by order of this court, the HP Defendants will continue to obstruct access to and use of the Original Road by PPI and Hakimian, thereby denying safe, reliable, year-round access to the Pierce Ranch by PPI and PPI's agents, employees, tenants, invitees and service providers, and by police, fire, and emergency medical personnel who may be dispatched to the Pierce Ranch.  Such conduct will result in irreparable harm to PPI and Hakimian.

FOURTH AMENDED COMPLAINT: (1) FOR DAMAGES CAUSED BY OBSTRUCTION OF EXPRESSLY RESERVED EASEMENT;  (2) TO QUIET TITLE TO IMPLIED EASEMENT;  (3) FOR DAMAGES CAUSED BY OBSTRUCTION OF IMPLIED  EASEMENT;  (4) TO QUIET TITLE TO EQUITABLE EASEMENT;  (5) FOR DAMAGES CAUSED BY OBSTRUCTION OF EQUITABLE EASEMENT;  (6) FOR DAMAGES CAUSED BY INTENTIONAL DIVERSION OF FLOOD CHANNEL;  (7) FOR PERMANENT INJUNCTION;  (8) FOR MANDATORY INJUNCTION;  AND (9) FOR DECLARATORY RELIEF

80.  PPI and Hakimian are informed and believe, and on that basis allege, that unless the HP Defendants are restrained and enjoined by order of this court, the HP Defendants will continue to interfere with the natural flow of Little Morongo Creek and divert the same to the detriment of the Original Road, including the Pierce Bridge. Such conduct will result in irreparable harm to PPI and Hakimian.

81.  The threat of such irreparable and permanent harm to PPI and Hakimian justifies the issuance by this court of a permanent injunction pursuant to California Civil Code Section 809 and other applicable law.

82.  PPI and Hakimian have no adequate remedy at law for the harm and damage that PPI and Hakimian have suffered and will continue to suffer in the future in the absence of injunctive relief.

## EIGHTH CAUSE OF ACTION

## MANDATORY INJUNCTION TO REPAIR PIERCE BRIDGE, REMOVE FENCE & MAKE COMMUNITY GATE ACCESSIBLE

(Only as to Defendants Hidden Passage, LLC, Rex Beasley, and Ellen Berkowitz, as Successor Trustee of the Berkowitz Family Trust Dated December 14, 1987, Restated August 18, 1995)

83.  Plaintiffs PPI and Hakimian incorporate by reference each and every allegation contained in paragraphs 1 through 77 of this Complaint as if repeated and set forth here completely.

84.  The Court should issue an injunction under which the HP Defendants are required (a) to repair the Pierce Bridge, (b) to remove the fence which obstructs the access of PPI and Hakimian to the Original Road, (c) to make the community gate accessible to PPI and to PPI's agents, employees, tenants, invitees and service providers, and to police, fire, and emergency medical personnel who may be dispatched to the Pierce Ranch, and (d) to take whatever action may be required to restore the flow of Little Morongo Creek to the manner in which it flowed prior to its diversion by the HP Defendants.

- 27 –

FOURTH AMENDED COMPLAINT: (1) FOR DAMAGES CAUSED BY OBSTRUCTION OF EXPRESSLY RESERVED EASEMENT; (2) TO QUIET TITLE TO IMPLIED EASEMENT; (3) FOR DAMAGES CAUSED BY OBSTRUCTION OF IMPLIED EASEMENT; (4) TO QUIET TITLE TO EQUITABLE EASEMENT; (5) FOR DAMAGES CAUSED BY OBSTRUCTION OF EQUITABLE EASEMENT; (6) FOR DAMAGES CAUSED BY INTENTIONAL DIVERSION OF FLOOD CHANNEL; (7) FOR PERMANENT INJUNCTION; (8) FOR MANDATORY INJUNCTION; AND (9) FOR DECLARATORY RELIEF

85.   PPI and Hakimian have no adequate remedy at law for the harm and damage PPI and Hakimian have suffered, and will continue to suffer in the future, in the absence of such injunctive relief.

### NINTH CAUSE OF ACTION
### DECLARATORY RELIEF

(As to all Defendants:  Hidden Passage, LLC;,  Rex Beasley;  Ellen Berkowitz, as Successor Trustee of the Berkowitz Family Trust Dated December 14, 1987, Restated August 18, 1995;  the United States Bureau of Land Management;  and the County of San Bernardino)

86.   Plaintiffs PPI and Hakimian incorporate by reference each and every allegation contained in paragraphs 1 through 77 of this Complaint as if repeated and set forth here completely.

87.   An actual controversy has arisen, and now exists between PPI and Hakimian, on the one hand, and the HP Defendants, the United States Bureau of Land Management, and the County of San Bernadino with respect to the access rights of PPI and Hakimian over the Original Road, including the Pierce Bridge.

88.   PPI and Hakimian are informed and believe, and on that basis allege, that the HP Defendants, the United States Bureau of Land Management, and the County of San Bernardino dispute the contentions of PPI and Hakimian, as set forth in the preceding paragraphs of this Complaint.

89.   Accordingly, PPI and Hakimian seek a judicial determination of the parties' respective rights and obligations regarding the Original Road and the Pierce Bridge - in particular a determination:

   a.   that PPI, Hakimian, their agents, successors and assigns are authorized to resume using the Original Road as their means of access to the Pierce Ranch from Little Morongo Road; and

   b.   that PPI, Hakimian, their agents, successors and assigns are authorized to perform periodic maintenance and repairs to the Original Road and to the Pierce Bridge in order to facilitate such access;  and

- 28 –

FOURTH AMENDED COMPLAINT:  (1) FOR DAMAGES CAUSED BY OBSTRUCTION OF EXPRESSLY RESERVED EASEMENT;  (2) TO QUIET TITLE TO IMPLIED EASEMENT;  (3) FOR DAMAGES CAUSED BY OBSTRUCTION OF IMPLIED  EASEMENT;  (4) TO QUIET TITLE TO EQUITABLE EASEMENT;  (5) FOR DAMAGES CAUSED BY OBSTRUCTION OF EQUITABLE EASEMENT;  (6) FOR DAMAGES CAUSED BY INTENTIONAL DIVERSION OF FLOOD CHANNEL;  (7) FOR PERMANENT INJUNCTION;  (8) FOR MANDATORY INJUNCTION;  AND (9) FOR DECLARATORY RELIEF

      c.    that none of the parties Defendant to this action have any right to obstruct or interfere with the rights of PPI, Hakimian, their agents, successors, and assigns (1) to use the Original Road as their means of access to the Pierce Ranch and (2) to perform periodic maintenance and repairs to the Original Road and to the Pierce Bridge.

90.    A judicial determination is necessary and appropriate at this time under the circumstances, in order that the parties may ascertain their respective rights, interests, and obligations regarding the Original Road and the Pierce Bridge.

WHEREFORE, Plaintiffs PPI and Hakimian pray for judgment against the Defendants as follows:

1.    On the First Cause of Action: As to each of the HP Defendants, jointly and severally,

      a.    an award to PPI of consequential damages in an amount to be proved with specificity at the time of trial, and also an award of punitive damages in an amount to be proved with specificity at the time of trial;

      b.    an award to Hakimian of consequential damages in an amount to be proved with specificity at the time of trial, and also an award of punitive damages in an amount to be proved with specificity at the time of trial;

2.    On the Second Cause of Action: As to Defendant Hidden Passage, LLC, and its successors in interest, a judgment quieting title in PPI to an implied easement across that portion of the Original Road which is located on property now owned by Defendant Hidden Passage, LLC, the precise location of which will be proved with specificity at the time of trial;

3.    On the Third Cause of Action: As to each of the HP Defendants, jointly and severally,

      a.    an award to PPI of consequential damages in an amount to be proved with specificity at the time of trial, and also an award of punitive damages in an amount to be proved with specificity at the time of trial;

- 29 –

FOURTH AMENDED COMPLAINT: (1) FOR DAMAGES CAUSED BY OBSTRUCTION OF EXPRESSLY RESERVED EASEMENT; (2) TO QUIET TITLE TO IMPLIED EASEMENT; (3) FOR DAMAGES CAUSED BY OBSTRUCTION OF IMPLIED EASEMENT; (4) TO QUIET TITLE TO EQUITABLE EASEMENT; (5) FOR DAMAGES CAUSED BY OBSTRUCTION OF EQUITABLE EASEMENT; (6) FOR DAMAGES CAUSED BY INTENTIONAL DIVERSION OF FLOOD CHANNEL; (7) FOR PERMANENT INJUNCTION; (8) FOR MANDATORY INJUNCTION;  AND (9) FOR DECLARATORY RELIEF

b.  an award to Hakimian of consequential damages in an amount to be proved with specificity at the time of trial, and also an award of punitive damages in an amount to be proved with specificity at the time of trial;

4.  On the Fourth Cause of Action:  As to Defendant Hidden Passage, LLC, and its successors in interest, a judgment quieting title in PPI to an equitable easement across that portion of the Original Road which is located on property now owned by Defendant Hidden Passage, LLC, the precise location of which will be proved with specificity at the time of trial;

5.  On the Fifth Cause of Action:  As to each of the HP Defendants, jointly and severally,

a.  an award to PPI of consequential damages in an amount to be proved with specificity at the time of trial, and also an award of punitive damages in an amount to be proved with specificity at the time of trial;

b.  an award to Hakimian of consequential damages in an amount to be proved with specificity at the time of trial, and also an award of punitive damages in an amount to be proved with specificity at the time of trial;

6.  On the Sixth Cause of Action:  As to each of the HP Defendants, jointly and severally,

a.  an award to PPI of consequential damages in an amount to be proved with specificity at the time of trial, and also an award of punitive damages in an amount to be proved with specificity at the time of trial;

b.  an award to Hakimian of consequential damages in an amount to be proved with specificity at the time of trial, and also an award of punitive damages in an amount to be proved with specificity at the time of trial;

7.  On the Seventh Cause of Action:  As to each of the HP Defendants, for the issuance of a permanent injunction under which the HP Defendants, and each of them, are permanently enjoined from any future interference with access to or use of the Original Road by Hakimian, by PPI, by PPI's agents, employees, tenants, invitees and service providers, and by police, fire, and emergency medical personnel who may be dispatched to the Pierce Ranch;

– 30 –

FOURTH AMENDED COMPLAINT: (1) FOR DAMAGES CAUSED BY OBSTRUCTION OF EXPRESSLY RESERVED EASEMENT; (2) TO QUIET TITLE TO IMPLIED EASEMENT; (3) FOR DAMAGES CAUSED BY OBSTRUCTION OF IMPLIED EASEMENT; (4) TO QUIET TITLE TO EQUITABLE EASEMENT; (5) FOR DAMAGES CAUSED BY OBSTRUCTION OF EQUITABLE EASEMENT; (6) FOR DAMAGES CAUSED BY INTENTIONAL DIVERSION OF FLOOD CHANNEL; (7) FOR PERMANENT INJUNCTION; (8) FOR MANDATORY INJUNCTION;  AND (9) FOR DECLARATORY RELIEF

8.  On the Eighth Cause of Action: As to each of the HP Defendants, for the issuance of an injunction under which the HP Defendants are affirmatively required (a) to repair the Pierce Bridge, (b) to remove the fence which obstructs the access of Hakimian, PPI, and PPI's agents to the Original Road, (c) to make the community gate accessible to Hakimian, PPI, and PPI's agents, employees, tenants, invitees and service providers, and to police, fire, and emergency medical personnel who may be dispatched to the Pierce Ranch, and (d) to take whatever action may be required to restore the flow of Little Morongo Creek to the manner in which it flowed prior to its diversion by the HP Defendants;

9.  On the Ninth Cause of Action: As to all Defendants a judicial decree which declares and confirms the rights, interests, and obligations of the respective parties regarding the Original Road and the Pierce Bridge – in particular, a determination:

    a.  that PPI, Hakimian, their agents, successors and assigns are authorized to resume using the Original Road as their means of access to the Pierce Ranch from Little Morongo Road;

    b.  that PPI, Hakimian, their agents, successors and assigns are authorized to perform periodic maintenance and repairs to the Original Road and to the Pierce Bridge in order to facilitate such access;  and

    c.  that none of the parties Defendant to this action have any right to obstruct or interfere with the rights of PPI, Hakimian, their agents, successors, and assigns (1) to use the Original Road as their means of access to the Pierce Ranch and (2) to perform periodic maintenance and repairs to the Original Road and to the Pierce Bridge.

10. On all Causes of Action: As to each of the HP Defendants, jointly and severally,

    a.  An award to PPI of PPI's costs of suit, including a reasonable attorney's fee;

    b.  An award to Hakimian of Hakimian's costs of suit, including a reasonable attorney's fee;

11. For such other and further relief as the court deems just and proper.

Date:  June 29, 2022

_Daniel C. Sever_
Daniel C. Sever
Attorney for the Plaintiffs

– 31 –

FOURTH AMENDED COMPLAINT:  (1) FOR DAMAGES CAUSED BY OBSTRUCTION OF EXPRESSLY RESERVED EASEMENT;  (2) TO QUIET TITLE TO IMPLIED EASEMENT;  (3) FOR DAMAGES CAUSED BY OBSTRUCTION OF IMPLIED  EASEMENT;  (4) TO QUIET TITLE TO EQUITABLE EASEMENT;  (5) FOR DAMAGES CAUSED BY OBSTRUCTION OF EQUITABLE EASEMENT;  (6) FOR DAMAGES CAUSED BY INTENTIONAL DIVERSION OF FLOOD CHANNEL;  (7) FOR PERMANENT INJUNCTION;  (8) FOR MANDATORY INJUNCTION;  AND (9) FOR DECLARATORY RELIEF

<u>VERIFICATION</u>

I Bijan Hakimian declare that I am an officer of the Plaintiff in this action and am authorized to make this verification on the Plaintiff's behalf. I have read the foregoing FOURTH AMENDED COMPLAINT: (1) FOR DAMAGES CAUSED BY OBSTRUCTION OF EXPRESSLY RESERVED EASEMENT; (2) TO QUIET TITLE TO IMPLIED EASEMENT; (3) FOR DAMAGES CAUSED BY OBSTRUCTION OF IMPLIED EASEMENT; (4) TO QUIET TITLE TO EQUITABLE EASEMENT; (5) FOR DAMAGES CAUSED BY OBSTRUCTION OF EQUITABLE EASEMENT; (6) FOR DAMAGES CAUSED BY INTENTIONAL DIVERSION OF FLOOD CHANNEL; (7) FOR PERMANENT INJUNCTION; (8) FOR MANDATORY INJUNCTION; AND (9) FOR DECLARATORY RELIEF. The foregoing Complaint is true of my knowledge, except as to the matters stated in it on my information or belief, and as to those matters I believe it to be true.

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Date:  June 29, 2022

Bijan Hakimian, Chief Financial Officer

- 32 –

PROOF OF SERVICE

STATE OF CALIFORNIA          )

COUNTY OF RIVERSIDE          )

Daniel C. Sever declares:

I am an active member of the State Bar of California and am not a party to this action.  My business address is 310 North Indian Hill Boulevard, #602, Claremont, CA 91711.

On July 1, 2022, I served a true copy of the within document described as FOURTH AMENDED COMPLAINT:  (1) FOR DAMAGES CAUSED BY OBSTRUCTION OF EXPRESSLY RESERVED EASEMENT;  (2) TO QUIET TITLE TO IMPLIED EASEMENT;  (3) FOR DAMAGES CAUSED BY OBSTRUCTION OF IMPLIED  EASEMENT;  (4) TO QUIET TITLE TO EQUITABLE EASEMENT;  (5) FOR DAMAGES CAUSED BY OBSTRUCTION OF EQUITABLE EASEMENT;  (6) FOR DAMAGES CAUSED BY INTENTIONAL DIVERSION OF FLOOD CHANNEL;  (7) FOR PERMANENT INJUNCTION;  (8) FOR MANDATORY INJUNCTION;  AND (9) FOR DECLARATORY RELIEF on the interested parties in this action in a sealed envelope addressed as follows:

> Matthew J. Schmock
> United States Attorney's Office
> Civil Division
> 300 North Los Angeles Sreet, Suite 7516
> Los Angeles, CA  90012
>
> Jonathan E. Shardlow
> Allen Matkins Leck Gamble Mallory and Natsis LLP
> 2010 Main Street, 8th Floor
> Irvine, CA  92614-7214
>
> Mitchell L. Norton
> Deputy County Counsel
> County of San Bernardino
> 385 North Arrowhead Avenue, 4th Floor
> San Bernardino, CA  92415-0140

- 33 –

1  by depositing the same with the United States Postal Service with postage thereon fully prepaid at

2  Palm Desert, California.

3      I declare under penalty of perjury under the laws of the State of California that the foregoing is

4  true and correct.

5      Executed on July 1, 2022, at Claremont, California

6

7

8                              Daniel C. Sever

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28                              - 34 –